UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SALLY NJUME-TATSING,<br><br>Defendant. | CASE NO.<br><br>JUDGE<br><br>INDICTMENT<br><br>18 U.S.C. § 2<br>18 U.S.C. § 1035<br>18 U.S.C. § 1347 |

**THE GRAND JURY CHARGES:**

At all times relevant to this Indictment:

    I.    <u>INTRODUCTION</u>

1. DEFENDANT SALLY NJUME-TATSING (NJUME-TATSING) owned and operated Labelle Home Healthcare Services, LLC (Labelle) which provided home health aide and nursing services to Medicaid recipients.

2. In July 2006, NJUME-TATSING, filed Articles of Incorporation for Labelle and provided a business address of 3098 Arborsye Court, Reynoldsburg, Ohio 43068.

3. Labelle had three Ohio offices located at:

    a. 1653 Brice Road, Reynoldsburg, Ohio 43068;

    b. 314 South Main Street, Mount Vernon, Ohio 43050; and

    c. 5500 Ridge Road, Parma, Ohio 44129.

4. As the owner of Labelle, NJUME-TATSING entered into agreements with the Ohio Medicaid Program (Medicaid). These agreements allowed NJUME-TATSING to submit claims for home health aide and nursing services provided by Labelle to Medicaid beneficiaries.

5. The Medicaid provider numbers assigned to Labelle were:

   a. 3031936- Reynoldsburg and Mount Vernon offices

   b. 0097838- Parma office

6. NJUME-TATSING, as the owner of Labelle, always maintained financial and administrative control over the business and was responsible for submitting home health care claims to Medicaid.

   II.   The Victim Health Insurance Program

7. The information provided in this section describes the victim, Medicaid, and serves as the Fed. R. Crim. P. 12.4 Disclosure Statement.

   a. The Ohio Medicaid Program

8. Medicaid, established by Congress in 1965, provided medical insurance coverage for individuals whose incomes were too low to meet the costs of necessary medical services. Approximately 60% of the funding for Medicaid came from the federal government. The Ohio Department of Medicaid (ODM), Columbus, Ohio, managed the Medicaid program, which was managed previously by the Ohio Department of Job and Family Services (ODJFS). ODM, formerly ODJFS, received, reviewed, and obtained formal authority to make payment of Medicaid claims submitted to it by providers of health care.

9. Each qualified Medicaid beneficiary received a Recipient Identification Number to identify the beneficiary as an authorized recipient of Medicaid benefits. Pursuant to the rules and regulations of the Ohio Medicaid Program, including Medicaid Managed Care Organizations

(MCOs), Medicaid only paid for services that were actually performed by qualified individuals and were medically necessary for the beneficiary's health.

10. Medicaid was a health care benefit program, as is defined in 18 U.S.C. § 24.

    b. <u>Health Care Reimbursements</u>

11. Providers who rendered services to Medicaid beneficiaries used a number assigned to the beneficiaries to fill out claim forms. The claim forms were submitted by the provider to make claims for payments from Medicaid. Providers could submit the claim forms in paper format or by electronic means. Medicaid processed each health insurance claim form and electronically deposited the claim payments into the provider's designated bank account or issued a check to the provider.

12. Health care claim forms, both paper and electronic, contained certain beneficiary information and treatment billing codes. The American Medical Association assigned and published numeric codes known as the Current Procedural Terminology (CPT) and Health Care Finance Administration (HCFA) Common Procedure Coding System (HCPCS) codes. The codes were a systematic listing or universal language used to describe the procedures and services performed by health care providers. The procedures and services represented by the codes were health care benefits, items, and services within the meaning of 18 U.S.C. § 24(b). They included codes for office visits, diagnostic testing and evaluation, home health services, and other medical related services. These treatment and service billing codes were well known to the medical community, providers, and health care insurance companies.

13. Health care programs had established payment schedules based on the codes billed by the provider. By designating a certain code, the provider certified to the health care programs that: (1) the contents of the claim forms were true, correct, and complete; (2) the claim forms

3

were prepared in compliance with the laws and regulations governing Medicaid; and (3) the services purportedly provided, as set forth in the claim forms, were medically necessary.

      c.    Home Health Services

14. Medicaid paid for home health care under a Fee For Service (FFS) system which was a traditional billing and reimbursement method in which providers charge for each medical service or unit provided to a beneficiary.

15. Home health nursing services must have been provided and performed within the nurse's scope of practice, and documented in accordance with the beneficiary's plan of care. It was also required for services to have been medically necessary, provided in a face-to-face encounter, and provided in accordance with federal and state laws rules and regulations, including anti-kickback laws. Medical services were not covered when the services were not rendered or not rendered as billed.

      d.    Labelle Billing Process

16. Labelle field nurses provided health services in the homes of Medicaid recipients. Pursuant to Medicaid rules and regulations, nurses documented the services on nursing notes which they subsequently submitted to office staff at Labelle. After receiving the nursing notes, office staff transferred the nursing note information to "Census Reports" and/or "Billing Sheets". The Census Reports and Billing Sheets were then sent to NJUME-TATSING for billing the services to Medicaid.

17. NJUME-TATSING entered the billing information electronically into a claims program at Dyserv Inc. (Dyserv), a third-party biller used by Labelle to assist in the submission of claims to Medicaid. NJUME-TATSING typically inputted the claim information remotely

4

using a laptop computer. Dyserv prepared and formatted the claims based on the information provided by NJUME-TATSING and then submitted the claims directly to Medicaid for payment.

**COUNT 1**
HEALTH CARE FRAUD
18 U.S.C. §§ 1347 and 2

18. Paragraphs 1 through 17 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

The Health Care Fraud Scheme

19. Beginning on or about January 1, 2017 and continuing through on or about June 30, 2020, in the Southern District of Ohio, NJUME-TATSING, knowingly and willfully executed a scheme to defraud a health care benefit program as defined in 18 U.S.C. § 24(b), that is the Ohio Medicaid Program, in connection with the delivery of, and payment for, health care benefits, items, or services, by billing or causing bills to be submitted for home health care related services that were either never rendered or not rendered as billed.

20. It was part of the scheme for NJUME-TATSING to knowingly and intentionally inflate the number of hours and nursing services when electronically entering the information into Dyserv's billing program.

21. It was further part of the scheme that NJUME-TATSING also changed the billing information to falsely reflect that services were provided by registered nurses when the services were actually performed by licensed practical nurses.

22. It was further part of the scheme that NJUME-TATSING billed, or caused to be billed, nursing services for Medicaid beneficiaries who were ineligible to receive home nursing services because they were either residing in private nursing homes or were deceased.

23. The loss amount to Medicaid as a result of NJUME-TATSING'S health care fraud scheme exceeded $2 million.

**All in violation of 18 U.S.C. §§ 1347 and 2.**

<u>**COUNTS 2-13**</u>
HEALTH CARE FALSE STATEMENTS
18 U.S.C. §§ 1035 and 2

24. Paragraphs 1 through 23 are realleged and incorporated by reference as though fully set forth herein.

25. On or about the dates listed below, in the Southern District of Ohio, NJUME-TATSING, knowingly, willfully, and in connection with the payment for health care benefits, services, or items involving a health care benefit program, falsified, concealed, or covered up by trick or scheme, a material fact, that is, submitted or caused to be submitted bills to the Ohio Medicaid program for nursing services that were not provided, and/or provided by licensed practical nurses but billed by NJUME-TATSING as provided by registered nurses, as follows:

6

| Count | Beneficiary | Date of Service | Approximate Claim Submission Date | Amount of claim submitted per visit ($) | Amount Paid ($) | Approximate Date Paid by Medicaid | Fraud Scheme |
|---|---|---|---|---|---|---|---|
| 2 | M.H | 07/17/2018 | 07/19/2018 | 47.40 | 47.40 | 08/02/2018 | Services not rendered |
| 3 | M.H. | 07/17/2018 | 07/19/2018 | 47.40 | 47.40 | 08/02/2018 | Services not rendered |
| 4 | M.H. | 07/18/2018 | 07/19/2018 | 47.40 | 47.40 | 08/02/2018 | Services not rendered |
| 5 | M.H. | 07/18/2018 | 07/19/2018 | 47.40 | 47.40 | 08/02/2018 | Services not rendered |
| 6 | D.C. | 10/28/2019 | 01/09/2020 | 47.40 | 47.40 | 01/24/2020 | Services not rendered |
| 7 | D.C. | 10/31/2019 | 01/09/2020 | 47.40 | 47.40 | 01/24/2020 | Services not rendered |
| 8 | L.V. | 02/02/2020 | 02/07/2020 | 47.40 | 47.40 | 02/21/2020 | Services not rendered |
| 9 | L.V. | 02/03/2020 | 02/07/2020 | 47.40 | 47.40 | 02/21/2020 | Services not rendered |
| 10 | P.A | 02/04/2020 | 02/07/2020 | 47.40 | 47.40 | 02/21/2020 | Services not rendered. |
| 11 | P.A. | 02/05/2020 | 02/07/2020 | 47.40 | 47.40 | 02/21/2020 | Services not rendered |
| 12 | R.T | 2/17/2020 | 02/21/2020 | 47.40 | 47.40 | 03/05/2020 | Services not rendered |
| 13 | R.T. | 2/18/2020 | 02/21/2020 | 47.40 | 47.40 | 03/05/2020 | Services not rendered |

**All in violation of 18 U.S.C. §§ 1035 and 2.**

A TRUE BILL.

_s/ Foreperson_____
FOREPERSON

KENNETH L. PARKER
UNITED STATES ATTORNEY

_____
KENNETH F. AFFELDT (0052128)
Assistant United States Attorney